**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL KNAPP,

               Plaintiff,

           -v-                                 6:25-CV-802 (AJB/MJK)

THE CITY OF UTICA BUREAU OF FIRE,
THE CITY OF UTICA, and JAMES NOON,

               Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION & ORDER</u>**

## I.      INTRODUCTION

On June 6, 2025, plaintiff Michael Knapp ("plaintiff"), an injured firefighter, filed this civil action in Supreme Court, Oneida County, alleging that defendants the City of Utica ("the City"), the Utica Fire Department[1] ("UFD"), and Assistant Fire Chief James Noon ("Assistant Chief Noon") (collectively "defendants") violated the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL") by discriminating against him on the basis of certain alleged disabilities that resulted from his on-the-job injuries. *See* Dkt. No. 2.

Defendants removed the action to federal court, Dkt. No. 1, and thereafter moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's complaint, Dkt. No. 7. Plaintiff opposed and requested leave to amend. Dkt. No. 15. Defendants received an extension of time in which to reply, Dkt. No. 17, but did not file a brief. Accordingly, the motion will be considered on the basis of the available submissions without oral argument.

---

[1] Plaintiff's complaint names the "City of Utica Bureau of Fire" as a defendant, but the Court takes judicial notice of the fact that this municipal agency generally refers to itself as the "Utica Fire Department."

## II.    BACKGROUND

These facts are taken from plaintiff's removed state-court complaint, Dkt. No. 2, and will be assumed true for the purpose of assessing defendants' motion to dismiss.

In 2005, UFD hired plaintiff as a firefighter.  *See* Compl. ¶ 6.  Plaintiff was injured on the job in 2012 and again about six months later in 2013.  *Id*. ¶¶ 7–8.  As plaintiff explains, he:

> suffers from sever [*sic*] posterior disc bulging and large predomi-
> nantly left-sided disc herniation with inferior extrusion C5-6 level
> with associated moderate to severe spinal canal stenosis and spinal
> cord flattening.

Compl. ¶ 11.  On each occasion, plaintiff sought and received "GML 207-a coverage" from the City.  *Id*. ¶ 9.  Plaintiff's second injury did not respond to conservative treatment and ultimately required surgery.  *Id*. ¶¶ 10, 12–13.  He returned to "light duty" in early 2014.  *Id*. ¶ 11.

In October of 2014, the City suspended plaintiff's GML 207-a benefits.  Compl. ¶ 14.  He appealed to the Public Employment Relations Board ("PERB").  *Id*.  Thereafter, the PERB held a hearing and found that plaintiff remained entitled to benefits.  *Id*. ¶ 15.  According to plaintiff, the hearing established that plaintiff's injury was a "covered injury" under GML 207-a.  *Id*. ¶ 16.

In 2015, plaintiff's "neck pain" from his previous injuries returned.  Compl. ¶ 17.  These symptoms required further non-surgical treatment, including massage therapy, chiropractic care, and physical therapy for pain management.  *Id*.  As plaintiff explains, he will "continue to expe-rience pain and decreased range of motion," particularly "during periods of physical and mental stress," because of his "injury and resulting scar tissue."  *Id*. ¶ 18.  According to plaintiff, he will need "supportive care" for "periods of exacerbated pain management."  *Id*. ¶ 19.

Between 2015 and 2020, plaintiff experienced more pain, underwent more treatment, and sometimes missed work.  Compl. ¶ 20.  By late 2020, Assistant Chief Noon appointed a "Nurse Case Manager" named Deborah Rudy ("Nurse Rudy") to attend plaintiff's medical appointments

and approve his treatments. *See id*. ¶¶ 21–23. At one appointment during the COVID-19 pandemic when plaintiff could only bring one individual into the exam room with him, plaintiff was unable to bring his wife to the appointment because Nurse Rudy told plaintiff that "his treatment would be denied or delayed" if he did not permit her to "witness the examination." *Id*. ¶ 22.

In January of 2021, Nurse Rudy informed plaintiff that Assistant Chief Noon needed to approve plaintiff's medical treatment. Compl. ¶ 23. At a medical appointment she attended that month, Nurse Rudy indicated to plaintiff's treating physician that she believed plaintiff "was lying about the extent of his injuries and pain in an effort to avoid taxes," since GML 207-a benefits are not taxed the way in which a regular paycheck would be taxed. *Id*. ¶ 24. Plaintiff sought advice from his union attorney, who advised him to stop letting Nurse Rudy attend his doctors' appointments. *See id*. ¶ 25.

Later in 2021, plaintiff began treating with Dr. Nameer Haider, a pain management specialist. Compl. ¶ 26. After receiving treatment from Dr. Haider, plaintiff was cleared to return to his duties. *Id*. ¶ 27. Dr. Haider wanted to perform additional treatments, including a "procedure known as nerve conduction to treat permanent nerve damage" in his hand. *Id*. ¶ 28. But defendants, at the direction of Assistant Chief Noon, ignored these requests. *Id*. ¶¶ 29–31.

Thereafter, plaintiff experienced another unspecified "light-duty injury," which exacerbated his previous injuries. Compl. ¶ 32. Dr. Haider removed plaintiff from work as a result of this injury. *Id*. Nurse Rudy informed plaintiff that he needed to attend an Independent Medical Examination ("IME"). *Id*. ¶ 33. But Nurse Rudy refused to give plaintiff any more information about the upcoming examination and referred plaintiff's questions to Assistant Chief Noon. *Id*.

On September 30, 2022, plaintiff underwent the IME with Dr. Warren Silverman, who examined plaintiff and determined that his "pain and medical conditions were not the result of

work-related injuries." Compl. ¶¶ 34–35. As a result of Dr. Silverman's IME, Assistant Chief Noon issued a letter informing plaintiff that defendants were going to terminate plaintiff's GML 207-a benefits. *Id*. ¶ 36.

In October of 2022, defendants terminated plaintiff's benefits and modified the period of time that plaintiff had not been working, "backdating [the] period" that he "was removed by his physician from his duties" and reclassifying it as "sick time," which placed plaintiff's "sick time bank into the negative." Compl. ¶ 37. Plaintiff appealed but defendants denied the appeal. *Id*. ¶ 38. During this time, someone at work told plaintiff that he "could not contact his HR departments" and "any concerns must be brought directly to" Assistant Chief Noon. *Id*. ¶ 39.

On May 19, 2023, during a UFD training exercise "involving an obstacle course," plaintiff suffered another injury, which further aggravated his pre-existing "back and neck" injuries. Compl. ¶ 40. Plaintiff timely sought GML 207-a benefits for this new injury, but Assistant Chief Noon "modified [defendants'] record of events" to "exclude" plaintiff from coverage. *Id*. ¶ 41. Assistant Chief Noon later sent plaintiff to an "unapproved" doctor, which caused plaintiff's "treatment and injury" to not be covered. *Id*. ¶¶ 42–43. After this injury, plaintiff "suffered constant harassment, loss of pay, and intimidation by [defendants] . . . all as a result of [p]laintiff's work-related injury." *Id*. ¶ 44.

In the first three months of 2024, plaintiff sent a series of three e-mails "in [an] effort to receive reasonable accommodations." Compl. ¶ 45. Defendants ignored these e-mails. *Id*. Instead, about one week after plaintiff's third e-mail, plaintiff received an e-mail from Human Resources Director Meaghan Scott ("Director Scott"). *Id*. ¶ 46. Director Scott's e-mail accused plaintiff of "abusing sick leave" and warned him that "disciplinary actions" would be taken if he continued to miss work. *Id*. Director Scott's e-mail indicated that plaintiff should contact his

employer "if health issues prevent the performance of his duties," but made "no mention of the several attempts that Plaintiff [had] already made to address these issues." *Id*.

In response, plaintiff filed a "harassment complaint" with the City and UFD against Assistant Chief Noon and Nurse Rudy. Compl. ¶¶ 47–48. There, plaintiff described the "mistreatment over his chronic pain, work related injury, the accusations that [he] was abusing benefits, Defendant[s'] routinely denying[ ] necessary medical treatments," his belief that Assistant Chief Noon instructed Director Scott to send the March 13 e-mail, and Assistant Chief Noon's "purposeful failure to recognize Plaintiff's work related injury caused during training on the obstacle course." *Id*. In response, the City and UFD told plaintiff that they were not going to investigate because the allegations were "potentially criminal in nature." *Id*. ¶ 48.

In sum, plaintiff alleges that UFD has never offered him "any accommodation for the several injuries he sustained while on the job" despite his "multiple requests for same." Compl. ¶ 49. Instead, defendants "have unlawfully, arbitrarily, and [with] the intent to harass and wear down the Plaintiff, denied necessary medical care for work related injuries." *Id*. ¶ 50. Plaintiff alleges that he is "out of work," "receiving no pay," and suffering "chronic pain" and "mental anguish, depression, and anxiety about his inability to continue to work and the fact that no reasonable accommodations were ever made." *Id*. ¶¶ 51–53.

Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 54. He received a right-to-sue letter on March 11, 2025. *Id*.

## III.    LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive

dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the de-

fendant is liable for the misconduct alleged." *Id*.

To assess this facial plausibility requirement, the court "must accept as true all of the fac-

tual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the

pleading, documents attached to the complaint or incorporated into it by reference, and matters

of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.    DISCUSSION

Plaintiff's two-count complaint alleges that defendants violated the ADA and the

NYSHRL. Dkt. No. 2. In his opposition memorandum, plaintiff explains that he has brought

ADA and NYSHRL claims for: (1) discrimination; (2) a failure to accommodate; and (3) retalia-

tion. Dkt. No. 15 at 10.[2] According to plaintiff, these claims arise from defendants' "termina-

tion of [GML] 207-a benefits and refusal to engage in the interactive process." *Id*.

Defendants argue that plaintiff's complaint must be dismissed in its entirety. Dkt. No. 7-

1 at 9. First, defendants assert that UFD should be dismissed as a defendant because it is merely

an administrative department of the City. *Id*. at 9. Second, defendants contend that Assistant

Chief Noon cannot be held liable under the ADA because the statute does not provide for indi-

vidual liability. *Id*. at 9–10. Third, defendants argue that plaintiff's ADA claims are time-barred

---

[2]  Pagination corresponds with CM/ECF headers.

to the extent that they involve events that occurred more than 300 days before he filed his admin-

istrative charge with the EEOC.  *Id*. at 10.  Fourth, and in the alternative, defendants claim that

plaintiff's ADA claims are time-barred to the extent that they involve events that took place

more than three years before this lawsuit was filed.  *Id*. at 10–13.

On the merits, defendants argue that plaintiff has failed to state a plausible ADA claim

because he has failed to allege that: (a) he is "disabled" within the meaning of the statute; (b) he

is "qualified to perform the essential functions of the job"; or that (c) he suffered a qualifying

"adverse employment action."  Dkt. No. 7-1 at 13–21.  Finally, defendants contend that plain-

tiff's NYSHRL claim should be dismissed because it does not identify a specific statutory basis

for liability.  *Id*. at 22.

Plaintiff opposes dismissal.  In plaintiff's view, he has plausibly alleged that he suffers

from a "long-term cervical and lumbar impairment substantially limiting major life activities

such as walking, lifting, and working" and that he "was qualified to perform essential duties with

reasonable accommodation," such as "continued medical treatment, light-duty work, or adminis-

trative assignment."  Dkt. No. 15 at 5.  Despite the fact that he "repeatedly requested" accommo-

dations, defendants refused "to engage in an interactive process" required by the ADA.  *Id*. at 5,

7.

Further, plaintiff contends that defendants' October 2022 termination of his GML 207-a

benefits and reclassification of his medical leave as "sick time" qualify as "adverse employment

actions because they directly affected compensation and employment status."  Dkt. No. 15 at 8.

Likewise, defendants' accusation that plaintiff was a "sick leave abuser" and their threats of dis-

cipline are sufficient to establish a retaliation claim.  *Id*. at 8.  According to plaintiff, his claims

are timely because "[a]ll events alleged—termination of benefits (October 2022) and continuing

refusals to accommodate through 2024—fall within the 300-day filing period." *Id*. at 8–9. And

while plaintiff acknowledges that the ADA does not provide for individual liability, he contends

that Assistant Chief Noon is a proper individual defendant under the NYSHRL. *Id*. at 9.

In the alternative, plaintiff requests leave to amend. Dkt. No. 15 at 9–10. According to

plaintiff, an amended complaint would: (1) clarify the "adverse actions" that he suffered; (2) ex-

pand his "accommodation" allegations; (3) add more detail about Assistant Chief Noon's indi-

vidual conduct; and (4) explain how his case qualifies as a "continuing violation." *Id*. at 10. In

addition, plaintiff asserts that he has been terminated by the City since he filed this lawsuit and

therefore he intends to amend his pleading to add additional claims related to that factual devel-

opment. *Id*. at 11–12.

After considering the parties' briefing in light of the governing law, defendants' motion

to dismiss will be granted in part and plaintiff will be given an opportunity to amend. The base-

line analysis starts from the Supreme Court's admonition that, "in the absence of any apparent or

declared reason," leave to amend should generally be "freely given." *Foman v. Davis*, 371 U.S.

178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amend-

ments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'").

Defendants opted to forego a reply memorandum. So in the absence of some "declared"

reason to deny amendment, the question is whether the Court's own sense of this case offers an

"apparent" reason to do so. The primary consideration when it comes to the question of amend-

ment is most often the issue of "futility." "An amendment to a pleading is futile if the proposed

claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Certain procedural choices made by plaintiff make it hard to be completely certain about whether an amendment would be futile.  For instance, putting aside the fact that plaintiff could have acted promptly to amend his pleading as of right, FED. R. CIV. P. 15(a)(1), a party seeking the Court's leave to amend (as opposed to the opposing party's written consent) is supposed to file a *motion* (or cross-motion) to amend, *see* FED. R. CIV. P. 7(b), 15(a)(2).  And under our Local Rules of Practice, any motion or cross-motion to amend should also be accompanied by "an unsigned copy of the proposed amended pleading."  N.D.N.Y. L.R. 7.1(b)(4).

The idea behind these procedural formalities is to help make certain things obvious, such as whether amendment should *not* be "freely given" because it would be a waste of time, *i.e.*, it would be "futile."  *Pettaway v. Nat'l Recovery Sols., Inc.*, 955 F.3d 299, 303 (2d Cir. 2020) (explaining trial court can in appropriate cases avoid "the need for multiple rounds of briefing" by "evaluating the motion in light of the facts alleged in the amended complaint").

But plaintiff did not do any of these things.  So as things stand, the procedural deficiencies in plaintiff's request to amend—in particular, his failure to include a proposed amended complaint—make it impossible to know for sure whether plaintiff's proposed changes to his pleading would be "futile."  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

At the outset, some things are clear enough.  First, UFD does not have a legal existence independent of the City and is therefore not a proper defendant in this action.  *See, e.g.*, *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 131–32 (N.D.N.Y. 2024) (explaining how New York law on this topic interacts with Rule 17 of the Federal Rules of Civil Procedure).  So UFD is subject to dismissal.  And no amendment could cure this defect, at least as long as the City is named.

Likewise, although an individual can sometimes be held liable under the NYSHRL, there is no individual liability under the ADA for employment discrimination or retaliation claims and therefore Assistant Chief Noon is not a proper defendant for any ADA claims. *See, e.g.*, *Yerdon v. Poitras*, 120 F.4th 1150, 1157 (2d Cir. 2024) (Title I); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (Title V); *Patrowich v. Chem. Bank*, 473 N.E.2d 11 (N.Y. 1984) (NYSHRL); *Popat v. Levy*, 253 F. Supp. 3d 527, 540–42 (W.D.N.Y. 2017) (same). So any ADA claim against Assistant Chief Noon must be dismissed.

Further, while an employer's failure to engage in the ADA's interactive process "can be introduced as evidence tending to show disability discrimination," *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017), "that failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible," *Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 98 (2d Cir. 2015) (cleaned up). So any freestanding ADA claim that might have been brought on that basis would be subject to dismissal.

Pivoting to the substantive law, it is clear that plaintiff's single-count ADA claim is actually *three* distinct ADA claims involving *three* distinct theories of liability: (1) disparate treatment; (2) a failure to accommodate; and (3) retaliation. Dkt. No. 15 at 10.

Although these theories are related to each other, they are conceptually distinct claims with their own legal standards and pleading requirements. *Stanley v. City of Sanford*, 606 U.S. 46, 51 (2025) (explaining ADA's five distinct titles); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 167–71 (2d Cir. 2024) (distinguishing between disparate-treatment and retaliation claims); *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (distinguishing between disparate-treatment and reasonable-accommodation claims); *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir. 2019) (explaining ADA's causation standards generally).

A review of plaintiff's removed state-court pleading in light of this general body of governing law leads to the conclusion that plaintiff's ADA claims, as currently alleged, are subject to dismissal under Rule 12(b)(6). First, plaintiff has failed to plausibly allege that he suffered a "disability" within the meaning of the Act, dooming his disparate-treatment and reasonable-accommodation claims. *See, e.g.*, *Woolf*, 949 F.3d at 94.

Second, to the extent that the Court might be inclined to read an ADA retaliation claim into this pleading, plaintiff has failed to plausibly allege sufficient non-conclusory factual matter to assess whether there is a causal connection between, on the one hand, a specific "protected activity" (or activities) and, on the other, some identifiable "adverse action" (or actions). *See, e.g.*, *Natofsky*, 921 F.3d at 353–54.

Third, when the parties are non-diverse and the federal-law claims are being dismissed, the right course of action is to decline to exercise supplemental jurisdiction over any state-law claims in the pleading, such as the NYSHRL claim that tagged along in this state-court action when it was removed. *See, e.g.*, *Lundy v. Catholic Health Sys.*, 711 F.3d 106, 117–18 (2d Cir. 2013).

Even so, a careful review of the existing pleading and plaintiff's opposition memorandum tends to suggest that permitting him leave to amend would not necessarily be futile. Plaintiff has alleged an employment relationship with defendants and has gestured toward a set of facts that might be sufficient to plausibly allege one or more disability-related claims. Accordingly, this action will be conditionally dismissed to give plaintiff an opportunity to amend.

If plaintiff elects to do so, his ADA and/or NYSHRL claims for disparate-treatment, reasonable-accommodation, and/or retaliation—assuming that one or more of them are going to be

re-pleaded—should be alleged in more factual detail and as separate counts, both to facilitate discovery and, if necessary, to enable meaningful pre-answer judicial review.

When re-pleading, plaintiff should remain mindful that the ADA incorporates Title VII's enforcement procedures. *See, e.g.*, *Cortes v. MTA N.Y. City Transit*, 802 F.3d 226, 231 n.2 (2d Cir. 2015). The ADA therefore requires a plaintiff to exhaust his administrative remedies before filing suit in federal court. *Soules v. Connecticut*, 882 F.3d 52, 57 (2d Cir. 2018).

Plaintiff is also cautioned that the ADA distinguishes between "adverse actions" that are "discrete acts" and those that might constitute a "continuing violation." *See, e.g.*, *Purcell v. N.Y. Inst. of Tech.*, 931 F.3d 59, 65 (2d Cir. 2019). For New York plaintiffs, each alleged "discrete act" triggers its own 300-day period for filing an administrative complaint with the relevant state or federal agency. *King v. Aramark Servs., Inc.*, 96 F.4th 546, 560 (2d Cir. 2024).

Although the "continuing violation doctrine" operates as an exception to this limitations period, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023), the doctrine's reach is generally limited, *see, e.g.*, *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403, 412 (N.D.N.Y. 2005), and "an untimely discrete act claim cannot be pulled into the limitations period by a claim premised on a continuing course of conduct, even if the course of conduct includes the discrete act." *King*, 96 F.4th at 560; *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 85 (2d Cir. 2024).

The reason the Court has flagged this body of law is because many of the "adverse actions" plaintiff has identified, at least as currently alleged, clearly run afoul of this 300-day requirement, and the Court is not convinced, at least not based on the existing pleading, that the continuing violation doctrine should apply to save any of them. So any re-pleaded ADA claims would have to have been exhausted and pursued in a timely fashion, and any attempt to invoke

the "continuing violation" doctrine would have to be accompanied by some compelling basis on which to conclude that they are not time-barred discrete acts dressed up as a continuing violation.

## V.   CONCLUSION

In sum, defendants' motion to dismiss will be granted.  However, because a review of the existing pleading and plaintiff's opposition memorandum tends to suggest that leave to amend would not necessarily be "futile," this action will be conditionally dismissed to give plaintiff an opportunity to amend.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss (Dkt. No. 7) is GRANTED in part and DENIED in part;

2.  Plaintiff's state-court complaint (Dkt. No. 2) is DISMISSED with leave to amend;

3.  Plaintiff shall have THIRTY DAYS in which to file an amended complaint;

4.  If plaintiff timely files an amended complaint, the Clerk of the Court is directed to re-set the deadline in which to answer or move against the pleading; and

5.  If plaintiff does not timely file an amended complaint, the Clerk of the Court is directed to enter a judgment dismissing this action without further Order of the Court.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

**IT IS SO ORDERED.**

Dated:  February 26, 2026
      Utica, New York.

Anthony J. Brindisi
U.S. District Judge